IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILSON C. WINEMILLER, JR. <br> WARREN P. ADAMS, and <br> MICKEY S. SLAUGHTER, each <br> individually and on behalf of all Maryland <br> residents similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WORLDWIDE ASSET PURCHASING, LLC <br> WORLDWIDE ASSET PURCHASING II, <br> LLC, WEST RECEIVABLE SERVICES, <br> INC., and WEST CORPORATION, <br><br> Defendants. | * <br> <br> * <br> <br> * <br> <br> * <br> <br> * <br> <br> * <br> <br> * <br> <br> * <br> <br> * | <br><br><br><br><br><br><br> Case No. 1:09-cv-02487 <br> Civil Action No. RDB-09-2487 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendants, Worldwide Asset Purchasing, LLC ("WAP"), Worldwide Asset Purchasing II, LLC ("WAP II"), West Receivable Services, Inc. ("West Receivable"), and West Corporation ("West") (collectively, "Defendants") move to dismiss Plaintiffs' complaint. Plaintiffs are three debtors — Wilson Winemiller, Warren Adams, and Mickey Slaughter — who are suing Defendants individually and as representatives of a putative class of all Maryland residents similarly situated. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendants' Motion to Dismiss (Paper No. 46) is **DENIED** as to Counts III, V, VI, and VIII, but **GRANTED** as to Counts I and II, the requests for declaratory and injunctive relief. Plaintiffs' Motion to Strike (Paper No. 50) is **DENIED**. Pursuant to the agreement of both parties, Counts IV and VII are DISMISSED without prejudice.

BACKGROUND

This is a consumer protection putative class action lawsuit involving allegedly unlawful debt collection practices. Plaintiffs are debtors who allege that Defendants violated the Maryland Consumer Debt Collection Act ("MCDCA"), the Maryland Consumer Protection Act ("MCPA"), and the federal Fair Debt Collection Practices Act ("FDCPA") when they attempted to collect on Plaintiffs' debts. Defendants are businesses that purchase consumer debt from other creditors at a substantial discount and then attempt to collect on that debt, either directly or through intermediaries. Here, Defendants' debt collection practice — and the source of Plaintiffs' Complaint — is the filing of lawsuits in Maryland state court.

Plaintiffs make two primary allegations relevant to this Motion to Dismiss. First, they argue that Defendants attempted to collect on Plaintiffs' debts without a license, violating Maryland state law requiring such a license.[1] Second, they argue that Defendants, while attempting to collect on Plaintiffs' debts, purposely and consistently misstated the total amount of the principal, wrongly including interest and fees in the principal calculation. On December 1, 2010, Defendants' moved to dismiss the Plaintiffs' claims. In ruling on the Motion to Dismiss, this Court treats Plaintiffs' factual allegations as true, construing those allegations in the light most favorable to the them. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards*, 178 F.3d at 243.

---

[1] This Court recently held that engaging in collection activity without a license constitutes unlawful conduct under the Maryland Collection Agency Licensing Act. *Bradshaw v. Hilco*, --- F. Supp. 2d ---, 2011 U.S. Dist. LEXIS 17954, at *17-18 (D. Md. Feb. 23, 2011).

The plausibility standard governs whether a complaint survives a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The standard requires that a claim have facial plausibility. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On the one hand, the plausibility standard requires more than "[t]hreadbare recitals of the elements of a cause of action" supported with conclusory assertions. *Id.* On the other hand, the plausibility standard does not require a fact-intensive complaint satisfying a heightened probability standard. *Id.* In striking this balance, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id. See also Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009) ("[W]e also conclude from the analysis in *Iqbal* that legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

Courts assume that well-pleaded factual allegations contained in the complaint are true "even if [they are] doubtful in fact," but courts do not give legal conclusions similar judicial deference. See *Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (internal citations omitted).

ANALYSIS

Defendants make three arguments in support of their motion to dismiss Plaintiffs' claims.[2] First, Defendants argue that the federal and Maryland statutes of limitations bar some of Plaintiffs' claims. Second, Defendants make several arguments as to why the relevant Maryland

---

[2] Pursuant to the agreement of both parties, the unjust enrichment claim and the Maryland Personal Information Protection Act claim are dismissed without prejudice.

statutes do not apply to them. Third, Defendants assert that some of the conduct alleged in Plaintiffs' Complaint does not constitute actionable conduct under federal law regulating debt collection. Finally, Defendants claim that Plaintiffs are not entitled to injunctive and declaratory relief. With the exception of Defendants' argument as to injunctive and declaratory relief, this Court finds that Defendants' arguments are without merit.

## I.     Statute of Limitations

### A. Adams

Defendants argue that the general statute of limitations governing civil actions in Maryland bars Adams' claims to the extent that they are based on Defendants' January 20, 2005 state court debt collection lawsuit against him. *See* MD. CODE, CTS. AND JUD. PROC. § 5-101 (specifying that, absent a statute stating otherwise, the statute of limitations for any civil action in Maryland is three years). In response, Adams points to the Complaint, which alleges that Defendants — *without a license* — sent a letter to Adams, dated May 11, 2009, demanding that he pay the debt that was the subject of the 2005 lawsuit. Compl. ¶ 62; Pl.'s Ex. 3. The Complaint also alleges that Defendants made an unauthorized inquiry into Adams' credit report on June 5, 2009. Compl. ¶ 65. Plaintiffs filed the lawsuit on September 22, 2009, a few months after Adams received the demand letter and was subject to the credit inquiry. Adams, therefore, argues that his claims fall within the statute of limitations.

Defendants make a few arguments in response, though none of them respond to Plaintiffs' central allegation that Defendants were *unlicensed* while trying to collect on the debt. For example, Defendants argue that this Court should dismiss Adams' claims because they are based on collection activity that followed the voluntary dismissal of a collection lawsuit against him. The nature of the dismissal has no bearing on the question of whether Defendants were

unlicensed when they attempted to collect on the debt. Defendants do not explain what impact this argument has on the statute of limitations question or otherwise, and this Court refuses to take judicial notice of any fact related to the validity of the underlying debt.

Defendants also argue that they should not be held liable because they hired a third-party — "Integrity" — to collect the debt. The Complaint, however, alleges that the Defendants hired Integrity to act as their agent. Even Integrity's letter to Adams demanding payment of the debt begins with: "We are contacting you *on behalf of* WORLDWIDE ASSET PURCHASING LLC." Pl.'s Ex. 3 (emphasis added). This language suggests a principal-agent relationship. Under Maryland law, "[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him." *Carroll v. State*, 3 A. 29, 29 (Md. 1885). Although this analysis is not conclusive on the nature of the relationship between Integrity and Defendants, it satisfies the plausibility standard, warranting denial of Defendants' Motion to Dismiss as to the statute of limitations issue.

### B. Winemiller

Defendants' argue that Winemiller's federal Fair Debt Collection Practices Act ("FDCPA") claim is time-barred. This Court holds that his claim is not time-barred. "Under the FDCPA there is a one-year statute of limitations: 'An action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs.' 15 U.S.C. § 1692k(d)." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 500-01 (D. Md. 2004). "Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent." *Id.* at 501.

Defendants argue that Winemiller's FDCPA claim is time-barred because the allegedly unlawful conduct — Defendants' filing of a debt collection lawsuit on January 24, 2008 —

occurred more than one year before Winemiller filed his complaint. Winemiller, however, received a Writ of Summons on March 24, 2009. Pl.'s Ex. 1. Though the FDCPA does not specifically define when the violation occurs, the date on which the debtor receives notice of the unlawful debt collection complaint can be the date on which the violation occurs for statute of limitations purposes. *See Akalwadi*, 336 F. Supp. at 501. Defendants cite to *Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997), for the proposition that the statute of limitations for an FDCPA claim should run only from the date that the state court complaint is *filed*. There is conflicting authority on this question, and other courts in the Fourth Circuit have refused to choose between the dates of filing and service. *See, e.g.*, *Martin v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 82171 (E.D.N.C. Aug. 12, 2010) ("Where a party's FDCPA claim is based on improper pursuit of debt-collection litigation, the alleged violation occurs either on the date the lawsuit is filed . . . or on the date that the debtor is served with the complaint.") (internal citations omitted). As this Court has previously noted, permitting either date to be the date on which the violation occurs is consistent with the FDCPA's goal to protect consumers from unlawful debt collection practices, including those that are deceptive or misleading. *See Bradshaw v. Hilco*, --- F. Supp. 2d ---, 2011 U.S. Dist. LEXIS 17954, at *27 (D. Md. Feb. 23, 2011) (noting that consumer protection is the primary goal of the FDCPA). Accordingly, the statute of limitations ran from March 24, 2009, several months before Plaintiffs filed the Complaint and well within the FDCPA's one-year statute of limitations.

**II.    Maryland State Law Claims**

Defendants argue that the MCDCA, MCPA, and the Maryland Collection Agency Licensing Act ("MCALA") do not apply to them for four reasons. This Court finds all of their arguments to be without merit.

### A. Liability for Parent Corporations

Defendants argue that West and West Receivable are not liable for any statutory violations because they did not directly engage in any unlawful conduct. Instead, they argue that they acted only through their subsidiaries. Under Maryland law, however, "[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him." *Carroll*, 3 A. at 29. Here, Plaintiffs allege, and Defendants do not dispute, that West and West Receivable acted through their subsidiaries as agents. Plaintiffs also may hold West and West Receivable liable under the theory of respondeat superior, even as "passive" members of a larger business entity. *See Allen v. Dackman*, 991 A.2d 1216, 1228 (2010) (*reconsideration denied*, May 6, 2010) (holding that an LLC member can still be held liable even when his only involvement in the tortious conduct was through a subsidiary). Plaintiffs have alleged sufficient facts to plausibly establish that West and West Receievable can be held liable under any of these theories.

### B. MCALA's Licensing Requirement — "Doing Business"

Defendants assert that WAP and WAP II do not need to comply with MCALA's licensing requirements.[3] MCALA requires that "a person must have a license whenever the person does business as a collection agency in the State." MD. CODE ANN., BUS. REG. § 7-301(a). Defendants argue that filing lawsuits does not constitute "doing business" as a collection agency. They cite to a provision of the Maryland Limited Liability Company Act ("LLC Act") that specifies that filing or defending against lawsuits does not constitute "doing business." *See* MD. CODE. ANN., CORPS. & ASSOC. § 4A-1009(a)(1). Defendants' argument is not persuasive for several reasons.

---

[3] Defendants maintain that if the Maryland registration requirements do not apply to WAP and WAP II, then West and West Receivable are also not liable under the theory of respondeat superior because their agents did nothing wrong.

7

Defendants' misread MCALA's text. Defendants might be accurate in their characterization of the statute if it read "collection agencies doing business." The statute, however, does not read that way — it reads "does business as a collection agency." MD. CODE ANN., BUS. REG. § 7-301(a). Here, WAP and WAP II are allegedly engaged in the collection of debts via the filing of lawsuits. They engage in their business, the filing of lawsuits, as collection agencies *for the purpose of* collecting debts. WAP and WAP II are, therefore, covered under the statute regardless of how they collect on their debts.

Furthermore, MCALA does not distinguish between collection agencies that use different mechanisms to collect debt. It targets all persons and entities that do business as collection agencies. If the Maryland legislature wanted to exempt businesses that utilize particular forms of debt collection from MCALA's licensing requirements, then it would have specified those forms in the statute rather than using the general language of "does business as a collection agency."

Finally, this Court has previously rejected Defendants' reading of MCALA. Judge Blake of this Court rejected Defendants' "doing business" argument on similar grounds, reasoning that "filing suit against defaulted debtors is a core business of debt collectors." *Hauk v. LVNV Funding, LLC*, 2010 U.S. Dist. LEXIS 117834, at *11 (D. Md. Nov. 5, 2010). Defendants offer no evidence to establish that the "doing business" provision of the LLC Act is designed to insulate from state regulation businesses who participate in litigation as a core part of their business. This Court, therefore, finds Defendants' argument to be without merit.

    C.  <u>MCALA's Licensing Requirement — "Collection Agencies"</u>

Defendants claim that they are not subject to MCALA's licensing requirements because they are not "collection agencies" as defined under the statute. *See* MD. CODE. ANN., BUS. REG.

§ 7-101.[4]  Specifically, Defendants argue that the regulations apply only to debt purchasers who attempt to collect on their own purchased debts ("active debt purchasers"), but do not apply to debt purchasers who place the purchased debts with a licensed collection agency to collect or file suit on their behalf ("passive debt purchasers").  This Court rejected this argument in *Bradshaw*, --- F. Supp. 2d ---, 2011 U.S. Dist. LEXIS 17954, at *2.  In *Bradshaw*, the defendant debt collector attempted to collect on its debts by filing lawsuits against the plaintiff debtor in Maryland state court.  *Id.* at *2.  This Court rejected the proffered dichotomy between "passive" and "active" debt purchasers, holding that MCALA's licensing requirements also apply to purchasers of debt who are not directly engaged in the collection of the purchased debts.  *Id.* at *15-17 (finding that the statutory language and "clear legislative intent" provided that passive debt buying entities needed to be licensed before collecting debts in Maryland).

D.  The Role of Third-Party Intermediaries

Defendants maintain that filing collection lawsuits alone does not constitute attempting to collect debts under the MCDCA.  They assert that because they referred the debts to licensed attorneys to file the lawsuits, this Court should not consider them "collectors" under the MCDCA.  This argument is not appropriate for a motion to dismiss and is therefore rejected.  Under the legal principles of Maryland agency law discussed above, Plaintiffs may still be able to hold Defendants liable if even if they hired a third-party to pursue the debt collection claims.

---

[4] MCALA defines "collection agency" as "a person who engages directly or indirectly in the business of: (1) (i) collecting for, or soliciting from another, a consumer claim; or (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it; (2) collecting a consumer claim the person owns, using a name or other artifice that indicates that another party is attempting to collect the consumer claim; (3) giving, selling, attempting to give or sell to another, or using, for collection of a consumer claim, a series or system of forms or letters that indicates directly or indirectly that a person other than the owner is asserting the consumer claim; or (4) employing the services of an individual or business to solicit or sell a collection system to be used for collection of a consumer claim." MD. CODE. ANN., BUS. REG. § 7-101.

It would be premature to resolve this question at the motion to dismiss stage, and Plaintiffs have pleaded facts sufficient to plausibly establish a claim.

### III.     Fair Debt Collection Practices Act Claims

Defendants request that this Court dismiss Plaintiffs' FDCPA claims.  Defendants target two of Plaintiffs' allegations.  First, they argue that Plaintiffs' allegation regarding Defendants' willful misrepresentation of the amount of principal owed in affidavits submitted in the underlying debt collection lawsuits is barred as a matter of law.  Second, Defendants argue that alleged state procedural defects in the debt collection lawsuits do not constitute FDCPA claims. This Court finds that both of Defendants' arguments are without merit.

#### A.  Misstating the Principal Due

Plaintiffs allege that Defendants' "willfully misstate[d] the amount of principal by misrepresenting principal, interest, and other fees as principal" in the affidavits submitted in the debt collection lawsuits in Maryland state court.  Compl. ¶ 113.  Plaintiffs argue that this constitutes a violation of the FDCPA's prohibition on the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.[5]  Defendants request that this Court dismiss this claim, arguing that, as a matter of law, they did not violate this provision when they included pre-charge off interest and fees in the principal balance due.  They cite to *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643 (7th Cir. 2009), in support of this proposition.  Defendants' reliance on *Wahl* is misplaced.

In *Wahl*, the Seventh Circuit rejected the plaintiff debtor's argument that the defendant debt collector violated the FDCPA's prohibition against false and misleading representations in collection notices when it "include[ed] any amount of interest" in the principal calculation,

---

[5] Plaintiffs also allege that it constitutes a violation of Maryland state law, but Defendants' argument is geared towards the federal claim.

including pre-charge-off interest. *Id.* at 645. The Seventh Circuit held that the plaintiff "can't win simply by showing that . . . [the creditor's] use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer." *Id.* at 646. Put differently, the plaintiff argued that it was a violation of the FDCPA for the debt collector to include any interest when calculating the principal amount, regardless of whether such a calculation was actually misleading or deceptive. The Seventh Circuit rejected that argument, reasoning that the touchstone for the analysis is whether the debt collector tried to mislead the consumer when it represented the principal amount. *See id.*

This case is unlike *Wahl*. Plaintiffs are not alleging simply that the principal was technically wrong — they are alleging that Defendants knew that it was false and attempted to mislead Plaintiffs into believing that it was true. E.g., Compl. ¶ 113. *Wahl* is also distinct because it involved a summary judgment motion in which all of the relevant information explained the amount of the requested principal and the defendant's knowledge and intent. While these facts will need to be explored during the discovery stage of this case, Plaintiffs have pleaded facts plausibly suggesting that Defendants engaged in deception, something that was absent in *Wahl*.

B. <u>Violations of Maryland Rule of Civil Procedure 3-306(a)</u>

Defendants argue that Plaintiffs cannot create an FDCPA claim by pointing to procedural defects in the underlying state debt collection lawsuits. The procedural defects relate to the Defendants' submission of allegedly incorrect and misleading affidavits.

Plaintiffs argue that Defendants' violated Rule 3-306(a) of the Maryland Rules of Civil Procedure by knowingly submitting defective affidavits. Compl. ¶ 120-24. Plaintiffs specifically argue that (1) neither Defendants' employees nor the employees of the original

creditor executed the affidavits; (2) Defendants deceived Plaintiffs by making it look like the affiants had personal knowledge of business records when they actually did not; (3) Defendants' purposely misstated the amount of principal owed in the affidavits; and (4) Defendants misrepresented that they had all the relevant records related to the debt in the affidavit when they actually did not.  Compl. ¶ 120-24.

Defendants rely on *Washington v. North Star Capital Acquisition, LLC*, 2008 U.S. Dist. LEXIS 78256 (N.D. Ill. Sept. 15, 2008), for the proposition that "the FDCPA will not be used as a vehicle to litigate claims arising under . . . [state] rules of civil procedure." *Id.* at *5.  In *Washington*, Judge Kocoras dismissed the plaintiff debtor's claim that the defendant debt collector violated the FDCPA when it failed, under Illinois law, to sufficiently plead its debt collection claim in the underlying lawsuit.  *Id.* at *5.  The court reasoned that the defendant's failure to sufficiently plead alone did not constitute an FDCPA violation because there was no allegation that the defendant debt collector made false statements in the underlying complaint. *Id.* (noting that the plaintiff "fails to allege [that] the statements contained in . . . [the] state complaint are false").  The key, the court suggested, is falsehood.  Failing to plead adequately is not the same as making misstatements in the complaint, and the FDCPA targets the latter conduct, not the former.  *See id.*

This case is unlike *Washington* because Plaintiffs have alleged that the statements and representations in Defendants' affidavits were false, and that Defendants knew that the statements were false.  The FDCPA's "hook" is falsehood and deception, and Plaintiffs' Complaint reflects that understanding because it does not simply assert that a violation of Rule 3-306(a) constitutes a violation of the FDCPA.  The operative element of the allegation is that Defendants knew that they were submitting affidavits that were false, containing

misrepresentations as to their knowledge of records, the principal owed, and the authenticity of the affidavits.

### IV. Injunctive and Declaratory Relief

Defendants request that this Court dismiss Plaintiffs' claims for declaratory and injunctive relief. Defendants' motion is **partially granted** as to the requests for declaratory and injunctive relief. As this Court and other courts in this jurisdiction have stated, "declaratory and injunctive relief is not available under the FDCPA, MCDCA, or the MCPA." *Bradshaw*, --- F. Supp. 2d ---, 2011 U.S. Dist. LEXIS 17954, at *34 (*citing Hauk v. LVNV Funding, LLC*, 2010 U.S. Dist. 117834 (D. Md. Nov. 5, 2010)).

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Paper No. 46) is **DENIED** as to Counts III, V, VI, and VIII, but **GRANTED** as to Counts I and II, the requests for declaratory and injunctive relief. Plaintiff's Motion to Strike (Paper No. 50) is also **DENIED**.[6] Pursuant to the agreement of both parties, Counts IV and VII are DISMISSED without prejudice.

A separate Order follows.

Dated: April 15, 2010

                                                       /s/
                                                   Richard D. Bennett
                                                   United States District Judge

---

[6] Plaintiffs asked this Court to strike some of Defendants' arguments related to the alleged passive debt buyer exemption. This Court resolved Defendants' passive debt buyer exemption argument in a recent case, as is discussed above. *See Bradshaw*, --- F. Supp. 2d ---, 2011 U.S. Dist. LEXIS 17954, at *12-19. There is, therefore, no reason to consider Plaintiffs' Motion to Strike. It is **denied**.