UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

WILSON C. WINEMILLER, JR.,
WARREN P. ADAMS, and MICKEY S.
SLAUGHTER, each individually and on behalf
of all Maryland residents similarly situated,

        Plaintiffs,

v.

Case No. 09-cv-2487 RDB

WORLDWIDE ASSET PURCHASING, LLC,
WORLDWIDE ASSET PURCHASING II, LLC,
WEST RECEIVABLE SERVICES, INC. and
WEST CORPORATION,

        Defendants.

_____/

**PLAINTIFF'S MOTION TO APPROVE INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES AND ATTORNEYS FEES AND COSTS TO CLASS COUNSEL**

Plaintiffs, Wilson C. Winemiller, Jr. ("Winemiller"), Warren P. Adams ("Adams"). Mickey S. Slaughter ("Slaughter")(collectively "Plaintiffs"), by and through counsel, Scott Borison, Phillip Robinson of LEGG LAW FIRM, LLC., Peter A. Holland of the HOLLAND LAW FIRM, PC, and Michael G. Morin, move this Honorable Court to approve Incentive Payments to the Class Representatives and Attorneys Fees and Costs to Class Counsel, and in support thereof offer the following:

I.    **INTRODUCTION**

The Defendants were, directly and indirectly, actively filing lawsuits against Maryland consumers seeking to collect on debts that were acquired by the Defendants when they were in

1

default. Prior to this action being filed, Defendants Worldwide Asset Purchasing, LLC and Worldwide Asset Purchasing II, LLC ("WAP Defendants") were acting as collection agencies without a license in thousands of collection cases filed in the state courts.

Following the commencement of this action, the parties took part in motions practice, including the Defendant's filing of a several Motions to Dismiss, Oppositions thereto, and Replies. Further, Defendants filed a Motion to Compel Arbitration. Opposition thereto, and Replies and need to conduct extensive discovery on whether or not Plaintiffs' claim were subject to a valid arbitration agreement. Plaintiffs and Class Counsel have filed a motion seeking final approval of the settlement class and this motion seeking approval of the incentive awards to the class representatives and approval for the attorney's fees and costs that the Defendants have agreed to pay. Class counsel submits this memorandum in support of the request for approval of the incentive and individual settlements of the Named Plaintiffs and attorney's fees paid to Class Counsel.

II. **THE NAMED PLAINTIFFS ARE ENTITLED TO AN INCENTIVE FOR THEIR ROLE AND SERVICE TO THE CLASS.**

In the settlement, the parties agreed to incentive payments of $7,500 to each of the Named Plaintiffs plus an additional reimbursement to Plaintiff Wilson Winemiller of the sum of $2,500 he personally incurred in the collection action against him..

In *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) the Court observed that incentive awards are "routine"…"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." In *Wood v. Coca-Cola Company*, 200 F.R.D 685, 694 (N.D.

Ga. 2001), the Court evaluated the incentive awards by looking at the overall benefits of the settlement. See also *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (courts consider "whether these actions [by the Class Representatives] resulted in a substantial benefit to Class Members"); and *Huguley v.General Motors Corp.*, 128 F.R.D. 81, 85 (E.D.Mich. 1989), aff'd 925 F.2d 1464 (6th Cir.), cert. den. sub nom., 502 U.S. 909 (1991) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne").

A sample of incentive payments approved in similar consumer class actions include: *Benway v. Resource Real Estate Services, LLC*, Case No. 1:05-cv-03250 (ECF Doc. 191)(November 12, 2011)(this Court awarded a $10,000 incentive payment to the named representatives); *Robinson v. Fountainhead Title*, Case No. 1:03-cv-03106 (ECF Doc. 198)(October 7, 2010)(same). *See also Bonett*, 2003 U.S. Dist. LEXIS 9757, 2003 WL 21658267, at *7 (approving $ 4,000.00 award to class representative in Fair Debt Collection Practices Act class action litigation); *see also Orloff*, 2004 U.S. Dist. LEXIS 7151, 2004 WL 870691, at *7 (approving $ 5,000.00 award to plaintiff as class representative).

A total incentive award of $22,500 to each of the Named Plaintiffs1 for their efforts and the benefits obtained for the class is reasonable and should be approved. It is also consistent with awards in similar type cases that have been approved by this Court. See *Miller v. Prestige Financial*, Case No. 09-1671-BEL, (ECF Doc. No. 36) (awarding $6,000 incentive award to each representative plaintiff).

---

1 Pursuant to the Settlement Plaintiff Winemiller would also be entitled to reimbursement of the paid attorneys fees he incurred in his collection action in the state court.

III. **CLASS COUNSEL SHOULD BE AWARDED A CONTINGENCY FEE EQUAL TO 40% OF THE VALUE OF SETTLEMENT TERMS.**

In a similar settlement last year, this Court approved a request for fees in a similar range requested by Class Counsel in this case and explained:

> With respect to the attorney's fees in this case, I am going to approve these attorney's fees for the reasons that follow: I have been known in the past to be a little bit stringent on attorney's fees in these matters, and I'll continue to give these very close review, and I know there certainly was at least one other case that comes to mind, I approved the entire settlement package but cut the attorney's fees back by a certain percentage, and I did so for the reasons I indicated in that case previously. But many times the matter of the overall benefit to the public is somewhat illusory, and I'm not inclined to grant a contingent fee on a floating theory as to what the benefit to the public is. Here I believe that there is strong consideration that should be given to the matter of Midland Funding and other similarly situated companies not proceeding in the fashion in which they had previously proceeded. So you not only have the matter of the common fund of some $200,000, a great portion of which will go to a very worthy cause at the University of Maryland School of Law and the cy-pres recipient here, but you have the matter of, I do think there is an overall public benefit to individuals similarly situated, particularly in light of the financial crisis which continues to plague our society and the matter of consumers who become overextended. Given that the whole world became overextended, there are some consumers trying to balance checkbooks each month who have become overextended, and the matter of debt collection agencies and compliance with state and federal law is I think a very important social consideration in this case. And while it would not necessarily always be true in all cases, in this case I think that is a fair reference to the percentage. So, whereas the 37 and a half plus approaching 40 percent contingent fee might be high, it's strictly based on numbers. When you factor in the matter of the benefit to the public, I think it's an appropriate percentage. And certainly counsel have listed previous cases, both in this district and out of this district, with similar such percentage awards in the 30 to 40 percent range, and I think that that is appropriate here.

*Johnson v. Midland,* Civ. Case No,. 1:09-CV-2391-ELH (March 10, 2011; Judge Bennett presiding), Hearing Tr.

The class will obtain substantial relief in this case to include:

(i) the dismissal of hundreds of pending collection actions filed by the Defendants with

4

prejudice;[2]

(ii) adjusting all class member accounts owed by any class member to Defendants to $0.00;[3]

(iii) for all class member accounts for which a judgment has been entered, a satisfaction will be filed (i.e., the judgment will be noted as paid and any judgment lien will be released);

(iv) the Defendants will not issue any IRS 1099 for debt forgiveness because the debts are disputed;

(v) the deletion of all information reported by the Defendant to the major credit bureaus concerning the Class members;[4]

(vi) agreement by the Defendant not to sell the Class member accounts to any other collection agency or other person;[5]

---

[2] The parties will be able to disclose the exacte total at the Final Fairness hearing. These dismissals will have a secondary benefit not only to the Class members not to have to defend themselves in court but also reduce the case loads of the state court district court judges.

[3] At the Final Fairness Hearing Class Counsel will present to the Court the class list under seal which details the significant benefits to each class member and collectively for this relief. Class Counsel will also provide the Court examples of the value of this result collectively and as compared to attorney fees requested.

[4] Class Counsel's experience working with at-risk consumers, such as many of the Class members, suggests that this relief is likely one of the greatest benefits to the Class Members in the short- and long-term. Specifically, the (presumptively) negative reporting by the Defendant to the credit bureaus should no longer impact the Class members' credit scores and as a result those scores should improve reducing the cost of credit to Class members prospectively.

[5] Class Counsel's experience working with at-risk consumers, such as many of the Class members, also suggests that this relief is a significant benefit as many consumers of these type of debts often face multiple, successive collection efforts other debt collectors on the same debt. *See, e.g., Chase Bank USA, N.A. v. Cardello*, 896 N.Y.S.2d 856 (N.Y. Civ. Ct., March 4, 2010) ("[O]n a regular

 (vii) payment by the Defendants the sum of $575,000.00 into a Common Fund for the purpose of payment of costs of administering the Settlement, payments to the Plaintiffs pursuant to terms of the Agreement and approved by the Court, Payment to the class members who completed approved claims forms, and payment of attorneys fees to Class Counsel as approved by the Court.6

 As compared to the *Midland* case, the class in this matter is receiving *substantially* greater benefits not obtained for the *Midland* class. First, the Class members here will not be subject to suit or collection activity on the same debt again and those debts which average in the thousands of dollars per class member from a simple review of the public records filed in the Maryland state courts by the WAP Defendants. While Class Counsel do not mean to represent to the Court that the true value of the debts equal these sums, Class Counsel do not believe an award of fees to counsel equal to

---

basis this court encounters defendants being sued on the same debt by more than one creditor alleging they are the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation."); *McCammon v. Bibler, Newman & Reynolds, P.A.,* 493 F. Supp.2d 1166, 1170 (D. Kan. 2007) (finding that a collection agency pursued former debtor for payment and obtained judgment despite knowing that former debtor had paid original creditor); *Grimsley v. Messerli & Kramer, P.A.*, No. 08-548 (JRT/RLE), 2009 WL 928319, at *1 (D. Minn. March 31, 2009) (finding firm collecting on already paid debt); *Sweatt v. Sunkidd Venture, Inc.*, No. C05-5406FDB, 2006 WL 1418652, at *1 (W.D. Wash. May 18, 2006) (noting firm collecting on debt already paid); *Hooper v. Capital Credit & Collection Services, Inc.*, No. CV 03-793-JE, 2004 WL 825619 (D. Or. Apr. 13, 2004) (finding attempted collection on debt already paid to original creditor potentially due to original creditor's bookkeeping errors); *McHugh v. Check Investors, Inc.*, No. Civ.A. 5:02CV00106, 2003 WL 21283288, at *2 (W.D. Va. May 21, 2003) (finding that former debtor had paid debt before collection agency ever began collection attempts).

6 It should be noted that absent the efforts of this action and the Plaintiffs and Class Counsel, it is likely most of the Class members would not have been able to achieve the same or similar results. Payment by the Defendants of the costs and expenses of the action as well as incentive payments to Named Representatives and Class Counsels' reasonable attorney fees therefore is a great benefit to the Class members and does not take away any of the relief obtained on their behalf.

$71.99 ($230,000 divided by 3,195 class members) per class member is excessive or unreasonable. Second, the Court can take judicial notice that the agreement to delete the negative trade lines of the class members will only benefit a majority of the class members who will as a result likely have higher credit scores and their "cost" of credit based upon credit scores will reduce significantly as a result in the near- and far-term as a result.

The Defendant has agreed in the Settlement that Class Counsel are entitled to reasonable attorneys' fees and costs as the Court may approve pursuant to 15 U.S.C. § 1692k and Rule 23.  The Defendant has also agrees that incentive fees (and certain reimbursement) to the Named Plaintiffs, $24,500 total, and attorneys fees and costs may be deducted from the Common Fund created by the settlement.  Over the past few years, class counsel has settled several consumer class actions before this Court.7  In these cases, attorney's fees were paid as a percentage from the common fund. The U.S. Supreme Court has held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. VanGemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749 (1980). The rationale for this approach is to avoid unjust enrichment of the class members for the work done that benefited them. The 4th Circuit's recent decision in *In Re Abrams & Abrams*, 605 F.3d 238 (4th Cir. 2010) firmly establishes the important role of contingency fees in our legal system.  Attorney's fees were entirely contingent on the outcome of this case.  If counsel were to lose, counsel would get nothing for fees.

The cash being paid out by the Defendant, per the terms of the Settlement Agreement and

---

7 *Johnson v. Midland,* Civ. Case No,. 1:09-CV-2391-ELH (Judge Bennett presiding); *Watts v. Capital One Auto Finance,* 07-cv-03477-CCB; *Crowder v. Americredit*, 06-cv-707-jfm; *Triad Financial Corporation v. Madden,* 24-C-060006310; *Shelton v. Crescent Bank,* 08-cv-01799 RDB.

conditioned upon the Court's approval, in this case equals approximately $575,000. In additional, the other relief to the class as outlined above a significant value in terms of finality of claim against the Class member by the Defendants and prospectively. This secondary relief is difficult to quantify but looking to the sum sought as a percentage of the average debt allegedly owned by the class members to Defendants, the attorney fees requested in this case equal approximately just a very small percentage of that benefit.

Without assigning any monetary value to the dismissal of thousands of lawsuits in *Midland*, plaintiffs were paid a sum, $130,000, equal to approximately 39% of the fees paid by the defendant in that case. *Johnson v. Midland,* Civ. Case No,. 1:09-CV-2391-ELH. In addition, the Plaintiffs' counsel were awarded 35% of a common fund in a case before Judge Titus, *Proctor, et al. v. Metropolitan Money Store Corp,* et al., 07-1957-RWT. Other courts have also awarded greater percentages when the cases involve substantially larger amounts. *See In re Busiprone Patent Antitrust Litigation*, 01-MD-1410 (S.D.N.Y. April 11, 2003) in which the court awarded class counsel in an early settlement one-third of a class action settlement of $200 million; *In re Vitamins Antitrust Litigation*, 2001 WL 34312839 (D.D.C. July 16, 2001) in which the court awarded counsel 34.6 percent of $365 million in an early settlement of a case. *In re Combustion, Inc.,* 968 F. Supp. 1116  (W.D.La. 1997) (36 percent of $127 million). In re: *Vitamins Antitrust Litig*., No. 99-197, MDL 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001 (awarding about 34% of about a $360 million dollar fund). *In re Cardizem CD Antitrust Litig.*, No. 99-MD-1278, at 18-20 (E.D. Mich. Nov. 26, 2002) (awarding 30% of a $110 million dollar fund). *Kurzweil v.Philip Morris Cos.,* Nos. 94 Civ. 2373, 94 Civ. 2546, 1999 WL 1076105, at *1-2 (S.D.N.Y. Nov. 30, 1999) (awarding 30%  of about a $124 million dollar fund).

Moreover, the settlement here has reduced the burden on the judiciary by avoiding trial and a potential appeal. As one court has noted "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice," *McKenzie Constr. Co. v. Maynard,* 758 F.2d 97, 101-02, (3d Cir. 1985). Early settlement should not reduce the fees. *See, e.g., Prandini v. National Tea Co.,* 557 F.2d 1015, 1019-20 (3d Cir. 1977); *Dorfman v. First Boston Corp.,* 70 F.R.D. 366, 385 (E.D.Pa.1976); *Blank v. Talley Indust.,* 390 F. Supp 1, 5-6 (S.D.N.Y. 1975).

## IV. CLASS COUNSEL SHOULD BE REIMBURSED FOR THE COSTS OF UNDERTAKING THE LITIGATION.

Class Counsel also seek reimbursement from the Common Fund for their costs incurred on behalf of the Class. As one Court has explained:

> "'Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.' " *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998) (quoting *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989)); *see also Miltland Raleigh–Durham v. Myers,* 840 F.Supp. 235, 239 (S.D.N.Y.1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed." *SEC v. Goren,* 272 F.Supp.2d 202, 214 (E.D.N.Y.2003) (citing *New York State Nat'l Org. for Women v. Terry,* 737 F.Supp. 1350, 1363 (S.D.N.Y.1990)). The expenses claimed in this action are $808.92.
>
> The expenditures in the within action pertain mainly to photocopies, telephone calls, postage, FedEx costs, court imposed filing fees, process servers, and transcripts, all of which are routinely recoverable.

*Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 365 (E.D.N.Y. 2008)(citing additional cases as well).

Class Counsel seek reimbursement of the following costs incurred in this matter:

9

| | |
|---|---:|
| Process Fees | $106.16 |
| Court Reporting Fees | $1,514.40 |
| Filing Fee | $350.00 |
| **TOTAL** | **$1,970.56** |

## V. CONCLUSION

For all of the reasons set forth herein, the Plaintiffs request the court to approve: (i) incentive payments of $7,500 to each of the Named Plaintiffs plus the $2,000 reimbursement to Plaintiff Winemiller (for a total of $24,500); and (ii) payment of attorney's fees and costs to Class Counsel in the amount of $231,970.56 for their time, dedication, expenses and the results they obtained for the class.

\_\_\_\_/s/_____
SCOTT C. BORISON (Bar No. 22576)
PHILLIP R. ROBINSON (Bar No. 27824)
Of Counsel
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016
FAX: (301)620-1018
borison@legglaw.com

PETER A. HOLLAND (Bar No. 10866)
The Holland Law Firm, P.C.
PO Box 6268
Annapolis, Maryland 21401
(410) 280-6133
FAX: (410) 280-8650
peter@hollandlawfirm.com

MICHAEL G. MORIN (Bar No. 15399)
PO Box  778
Severn, MD  21144
(410) 551-4340
FAX: (855) 329-6453
mikemorin.morinlaw@gmail.com

*Attorneys for the Plaintiff and Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on the Defendants' counsel through the Court's electronic case filing system when it was filed with the Court.

\_/s/_____
Phillip Robinson